**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 12-4922

_____

UNITED STATES OF AMERICA,

             Plaintiff - Appellee,

        v.

LARRY DALE WOODS, JR., a/k/a Toby,

             Defendant - Appellant.

_____

Appeal from the United States District Court for the Western
District of North Carolina, at Statesville.   Richard L.
Voorhees, District Judge.  (5:98-cr-00164-RLV-6)

_____

Argued:  January 29, 2014          Decided:  March 24, 2014

_____

Before DUNCAN, KEENAN, and WYNN, Circuit Judges.

_____

Vacated and remanded by unpublished per curiam opinion.

_____

**ARGUED**: Matthew Collin Joseph, Charlotte, North Carolina, for
Appellant.   Amy Elizabeth Ray, OFFICE OF THE UNITED STATES
ATTORNEY, Asheville, North Carolina, for Appellee.  **ON BRIEF**:
Anne M. Tompkins, United States Attorney, OFFICE OF THE UNITED
STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Larry Dale Woods, Jr. appeals from the district court's judgment revoking his term of supervised release and sentencing him to serve a term of 26 months' imprisonment. Woods argues that the district court erred in admitting hearsay evidence at the revocation hearing without engaging in the balancing test required by Rule 32.1 of the Federal Rules of Criminal Procedure (Rule 32.1) and our decision in United States v. Doswell, 670 F.3d 526 (4th Cir. 2012). We conclude that the district court's admission of this evidence was error and, because the error was not harmless, we vacate the court's judgment and remand for further proceedings.

I.

In 1999, Woods entered a guilty plea to charges that he conspired to possess with intent to distribute quantities of cocaine, cocaine base, and marijuana, in violation of 21 U.S.C. §§ 846 and 841(a)(1). The district court sentenced him to serve a term of 292 months in prison, followed by a ten-year period of supervised release. Among other provisions, the conditions of supervised release required that Woods "follow the instructions of the [p]robation [o]fficer" and not commit any federal, state, or local crimes.

2

Woods began his term of supervised release in March 2009 after serving his term of imprisonment. In August 2012, however, his probation officer filed a petition seeking revocation of Woods' supervised release (the petition) based on two incidents described below.

In the first incident (the Crisp incident), Woods allegedly placed a telephone call to an ex-girlfriend, Alicia Crisp, after his probation officer directed that Woods have no contact with her. The government alleged that Woods violated the supervised release condition requiring him to follow the probation officer's instructions.

In the second incident (the Williams incident), Woods allegedly assaulted another ex-girlfriend, Sarah Williams. During that episode, Woods purportedly committed the offenses of assault, trespass, larceny, and injury to Williams' property. Woods' alleged conduct resulted in warrants being issued for his arrest. The government contended that based on these charges, Woods violated the supervised release condition that he not commit any crimes during his release period.

The district court conducted a supervised release revocation hearing. Neither Crisp nor Williams attended, and subpoenas had not been issued to secure their presence. Instead, the government relied on the testimony of law

enforcement officers who recounted certain statements made by the two women concerning Woods' conduct.

With regard to the Crisp incident, Woods sought to exclude as inadmissible hearsay the testimony of United States Probation Officer Jason Kemp concerning his conversation with Crisp. The district court overruled Woods' objection, explaining summarily that "[h]earsay would be admissible particularly where there are indications of reliability." However, the court did not make a reliability finding at that point or at any other point during the hearing. Kemp was permitted to testify without restriction about Crisp's report that Woods had placed a telephone call to her. Kemp further stated that Crisp had given him a recording of that telephone conversation, which the court admitted into evidence.

Kemp also testified about his conversations with Williams. Woods timely objected to this testimony as inadmissible hearsay, citing this Court's decision in Doswell concerning the limited circumstances under which hearsay evidence may be admitted at a supervised release revocation hearing. The district court overruled the objection without explanation.

Kemp testified that Williams told him that Woods had attacked her in her home in August 2012. According to Kemp, Williams stated that Woods "slammed" her into a wall, and later threw her onto a bed and took her car keys and cell phone.

4

The district court also heard testimony from Christopher Craven, a law enforcement officer employed by the Sheriff's Office of Iredell County, North Carolina, concerning the Williams incident. Craven had responded to Williams' residence the morning following the incident after Williams telephoned the police. Over Woods' hearsay objection, Craven was allowed to testify about his conversation with Williams, including that Woods attacked her and took her car keys and cell phone. During Craven's testimony, over Woods' objection, the government introduced into evidence a written statement that Williams provided to Craven, as well as photographs taken by police showing her injuries and the damage to her home.

After the district court admitted the above hearsay evidence, Woods testified in his defense. Woods admitted contacting Crisp after she placed two telephone calls to him. However, Woods denied assaulting Williams, damaging her home, or taking her car keys or cell phone.

After hearing this testimony, the district court held that the government had established by a preponderance of the evidence that Woods committed four violations of the conditions of his supervised release.[1] The court did not make a reliability

---

[1] The petition asserted five violations of the terms of Woods' supervised release, but the court dismissed the most serious of those allegations pertaining to a felony burglary (Continued)

5

finding concerning the hearsay evidence, but stated generally that the violations were "supported by credible evidence." The court revoked Woods' supervised release and sentenced him to a 26-month term of imprisonment, to be followed by a 34-month period of supervised release. Woods filed a timely appeal challenging the district court's judgment.

## II.

Woods argues that this Court should vacate the district court's judgment because the court impermissibly relied on hearsay evidence in concluding that Woods committed the acts alleged in the petition. Woods asserts that the court erred in considering the above hearsay evidence without engaging in the balancing test required by Rule 32.1 and our decision in Doswell.

In response, the government contends that the district court did not err in admitting the challenged hearsay evidence because the district court made a reliability finding, which is supported by the record. Alternatively, the government maintains that even if the evidence was erroneously admitted,

---

charge initiated in connection with the Williams incident. The court held that the government established the other four violations as alleged in the petition, three of which related to Williams and one of which related to Crisp.

such error was harmless.  We disagree with the government's arguments.

We review for abuse of discretion the district court's decision to admit hearsay evidence at a supervised release revocation hearing.  Doswell, 670 F.3d at 529.  As we explained in Doswell, "[s]upervised release revocation hearings are informal proceedings in which the rules of evidence, including those pertaining to hearsay, need not be strictly applied."  Id. at 530.  Nevertheless, when the government seeks to revoke an individual's period of supervised release, the releasee has a constitutional right "to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)."  Id. (quoting Morrissey v. Brewer, 408 U.S. 471, 489 (1972)).

Rule 32.1 sets forth the circumstances in which hearsay evidence may be admitted in a supervised release revocation hearing.  Under the Rule, a releasee has the right to "question any adverse witness unless the court determines that the interest of justice does not require the witness to appear." Fed. R. Crim. P. 32.1(b)(2)(C).  As we observed in Doswell, the district court is required under Rule 32.1 to apply a "balancing test" before admitting hearsay evidence, in which the court weighs the releasee's "interest in the constitutionally

guaranteed right to confrontation against the government's good cause for denying it."  670 F.3d at 530 (citation omitted).

A "critical factor" in this balancing test is the "reliability" of the hearsay evidence.  Id. at 531.  When hearsay evidence is reliable and the government has given a satisfactory reason for not producing the adverse witness, the hearsay evidence likely will be admissible under Rule 32.1.  Id.

In Doswell, we vacated a district court's judgment because the court admitted certain hearsay evidence necessary to the court's holding without making any finding of reliability or any consideration of the balancing test required by Rule 32.1.  Id. Based on the present record, we reach the same result here. Like the record in Doswell, the record before us shows that the district court did not make a reliability finding with respect to the challenged hearsay evidence.[2]  Further, as in Doswell, the district court did not give any consideration to the question whether the government had offered a satisfactory explanation for its failure to produce Crisp and Williams at the hearing,

---

[2] The district court's statement that "[h]earsay would be admissible particularly where there are indications of reliability" does not constitute a reliability finding, because, among other reasons, the court made that statement before the evidence at issue was proffered.  Similarly, the court's statement at the end of the hearing that the government's allegations were "supported by credible evidence" is not an explicit reliability finding.

nor did the court attempt to engage in the balancing test required by Rule 32.1.

We decline to assess for the first time on appeal the reliability of challenged hearsay evidence, nor will we conduct in the first instance the Rule 32.1 balancing test. As a general matter, those tasks should be undertaken by the district court. Cf. United States v. Rogers, 556 F.3d 1130, 1137 (10th Cir. 2009) (stating that the "district court was in the best position" to assess the reliability of evidence for purposes of determining whether hearsay evidence should have been admitted); United States v. Watson, 409 F.3d 458, 463 (D.C. Cir. 2005) (observing that district courts are in the best position to conduct the balancing test required by Federal Rule of Evidence 403).

We further hold that the district court's error was not harmless. An error is harmless if "it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." See United States v. Lovern, 293 F.3d 695, 701 (4th Cir. 2002) (citation and internal quotation marks omitted). The government bears the burden of demonstrating harmless error. Id.

Here, with respect to both incidents, the government heavily relied on the out-of-court statements that Crisp and

Williams made to law enforcement officers. Thus, the challenged hearsay evidence was central to the government's case.

With regard to the Crisp incident, the admission of the hearsay statements fundamentally affected Woods' trial strategy. Woods may have elected not to testify if the court had excluded Kemp's testimony about Crisp's statements and the recording she gave him. That recording was admitted into evidence based on foundation testimony from Kemp, who relied on Crisp's hearsay statements concerning the recording.

With regard to the Williams incident, the government presented non-hearsay photographic evidence of Williams' injuries and the damage to her home. However, that evidence merely established that such injuries and damage occurred, and did not establish the identity of Williams' assailant. Indeed, we observe that there is evidence in the record that Williams was involved in a physical altercation with her mother-in-law two or three days before the alleged episode with Woods.

We cannot accept the government's assertion, made for the first time on appeal, that Williams' oral and written statements provided to Craven were admissible under the excited utterance and present sense impression exceptions to the hearsay rule. The government did not offer the statements into evidence on those bases, nor did the district court make factual findings necessary to consideration of those hearsay exceptions. Both

10

these hearsay exceptions require a factual inquiry into the timing of the statement and the declarant's mental state.[3] As an appellate court, we do not make such factual findings. See Anderson v. Bessemer City, 470 U.S. 564, 573-75 (1985); Mora v. City of Gaithersburg, 519 F.3d 216, 230 (4th Cir. 2008).

In view of these considerations, we conclude that the government has not met its burden of establishing "beyond a reasonable doubt that the error complained of did not contribute" to the district court's holding that Woods violated the terms of his supervised release. See Lovern, 293 F.3d at 701. Accordingly, the district court's failure to apply the balancing test required by Rule 32.1 and Doswell requires us to vacate the court's judgment, and to award Woods a new hearing on the allegations that he violated the terms of his supervised release.

---

[3] For a statement to qualify under the excited utterance hearsay exception, the statement must describe a "startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed R. Evid. 803(2); see United States v. Jennings, 496 F.3d 344, 349 (4th Cir. 2007). Similarly, admission of evidence under the present sense impression hearsay exception requires that the statement "describ[e] or explain[] an event or condition, made while or immediately after the declarant perceived it." Fed. R. Evid. 803(1); see United States v. Portsmouth Paving Corp., 694 F.2d 312, 323 (4th Cir. 1982). See generally United States v. Jackson, 124 F.3d 607, 618 (4th Cir. 1997) (discussing the excited utterance and present sense impression hearsay exceptions).

III.

For these reasons, we vacate the district court's judgment and remand the case for a new hearing on the allegations of the petition.

VACATED AND REMANDED